## MABEN v. MABEN.

1. **Divorce**: INHUMAN TREATMENT: INSUFFICIENT EVIDENCE. The evidence in this case considered, (see opinion,) and, while disclosing an unhappy state of affairs produced by excitable temperaments and caustic tongues, irritated and provoked by the presence in the family of an unwelcome mother-in-law, *held* that it failed to establish any such inhuman treatment on the part of defendant toward plaintiff as tended to endanger her life or health, or justified a divorce from the bonds of matrimony, or an order for the division of the children between the parties.

*Appeal from Cerro Gordo District Court*—HON. J. B. CLELAND, *Judge.*

TUESDAY, OCTOBER 18.

ACTION for a divorce and custody of the children of the parties. The court granted a divorce, and gave the custody of the eldest child to the defendant, and the youngest to the plaintiff. The defendant appeals.

*Richard Wilber* and *Ellis & Ellis*, for appellant.

*Sherwin & Schermerhorn* and *John Cliggitt*, for appellee.

SEEVERS, J.—The parties were married in 1878, and the plaintiff left the defendant in October, 1882. The ground on which a divorce is asked is that the defendant "is guilty of such inhuman treatment as to endanger the life" of the plaintiff. After a careful examination of the evidence and argument of counsel, we have reached the conclusion that the evidence fails to show that the plaintiff's life was endan-

gered, or that her health was impaired, by the conduct of the defendant. We think there is a failure to establish that the defendant did anything which will justify a divorce. The plaintiff testified that the defendant " threatened to kick me. * * * He was angry. Think he said he would kick me as sure as hell. " The defendant testified that he has no recollection of saying he would kick the plaintiff, but admits he may have said so in a "joking manner ; " but he never said so in anger, or with the intention of hurting her. One Busseck was present, and testifies that the defendant said he would either " kick or slap " plaintiff, and that he (the witness) did not think "there was any danger of any one being hurt. If his voice had appearance of anger I suppose I would have paid attention to it. " The plaintiff does not testify that she had the slightest apprehension that the defendant would, " kick " her at the time mentioned, and she testifies: " He did not attempt to kick me. I did not fear any violence. " The probability is that the defendant's version of this transaction is correct ; but, if not, it clearly did not in any degree affect the health of the plaintiff.

She further testifies that in the spring of 1881 the defendant " shook and swore at me. At that time * * * he opened the door, and I remonstrated with him for letting the wind blow the dirt. I was sweeping. He went out, and Mildred cried, and he opened the front door, and the wind shut the door, and knocked Mildred down, and he shook me hard. Think it was the irritation hearing the child cry caused him to shake me. I cannot say whether he intended to hurt me. He looked very angry. I never irritated and scolded him for opening the door. I was some angry. " Defendant testifies that he has no distinct recollection of this transaction, but that he did not " strike her at all." His recollection is that, after going out and hearing the baby cry, he went back to open the door to " see what was the matter, when the plaintiff was pushing it shut, and I probably pushed it open again to get in. " No one was present, and

we cannot say that the evidence of the plaintiff is to be believed as to the personal violence, and the evidence of the defendant disbelieved; therefore such charge cannot be regarded as established. Besides this, she does not state that he intended to or did hurt her. In the same year the plaintiff testifies that she was standing "at the back door, and he struck me in the back, and knocked me down the step. I saved myself from falling by catching hold of the well pump. I suppose he struck me with his hand. * * * He was angry. * * * Think he used a great deal of force, so that it hurt me a good while afterwards. Then he knocked a pail of milk over, and splashed me from head to foot. * * * Cannot tell whether he kicked me or the milk first. * * * Did not see him kick the pail; my back was turned."

On cross-examination she states: " I was some out of patience by his refusing to carry out the sour milk. There was a jar of milk broken. I broke it myself. Threw it out, jar, milk and all. * * * Did not care whether the jar broke or not. * * * He kicked the pail over before he struck me. Do not know whether he hit or kicked me. * * * Do not know as I ever complained to him about the strike hurting me. I felt it for an hour or two. We were both excited at the occurrence."

The defendant denies that he struck or kicked her. Admits there was a dispute as to which should be taken away first, the sour or the sweet milk. He was in favor of the sour; she of the sweet. He had hold of a jar of the former, and she took it out of his hands. He "hung on to it a little, and she spattered some milk on herself, which made her still angrier; and she wrenched it out of my hands and threw it on a pile of stones, and broke it. That is all that happened. * * * I did not kick over a pail of milk." No one was present. The burden was on plaintiff. There is not a preponderance of evidence that any violence was used, or that the defendant did anything for which he can be justly

Maben v. Maben.

blamed; much less is there a ground for a divorce established.

In October, 1882, the plaintiff testifies that she was holding "both the children.    *    *    *    Defendant took the eldest, and she cried to come back, and he whipped her.    I told him he must not,    *    *    *    and he whipped her; and I gave the baby to mother, and went to take her away from him.    He would not let me, and started for the other room.    I started after him, and at the door tried to take her, and he struck me with such force as to knock me back *    *    *    over the arm of a chair into the chair." The defendant states this transaction quite differently, but admits that he pushed the plaintiff away from the door, so that he could pass out of the room with the child.    But conceding this evidence of the plaintiff to be correct, the whole difficulty occurred because of her effort to take the child away from him.    There is no evidence that he was punishing the child immoderately, or that such was his habit, and he certainly had the right to punish her reasonably if he thought she deserved it.    The plaintiff ought not to have interfered, and is wholly blamable for what occurred.    Under the evidence, we are unable to see that defendant could have done differently than he did.    Besides this, he did not intend to hurt her.    Both were angry, and it was a hasty act which he no doubt regretted, and we have no doubt she regretted the whole occurrence after a brief period, when passion had subsided.

These, we think, are all the acts of personal violence the plaintiff claims were inflicted on her.    In addition to this, she says he threatened violence on more than one occasion, and cursed her in the presence of others, and on one occasion, when she was "finding fault with him about something or other, he said no one but a d——d whore would act as I did."    He denies he used such language, but testifies he said to her it was "bad enough to scold around the house, but to stand in the door and talk and act as she did was going too

far, and said that the very strumpet on the street could not make a worse appearance than she did." We think the evidence of the defendant is true as to this transaction; for there is nothing in his character or conduct, as appears from the record before us, which would warrant the conclusion that he would use the epithet with reference to his wife where the plaintiff says he did. She was excited at the time, and we think has, through forgetfulness, failed to state what he did say. She does not testify that her feelings were hurt, or that it made any impression on her. She and her husband talked it over afterwards, and he admitted he was angry when he said it. The comparison cannot be justified; but, while this is so, the plaintiff was not shocked thereby, much less was her life or health endangered.

Much evidence was introduced tending to show that the defendant did not provide as well for his family as he ought to have done. On the other hand, there is evidence that he provided for his family as well as his means would allow, and as well as any reasonable person could ask. And we think he did. This is our conviction; and we are further clearly satisfied from all the evidence that the plaintiff's health was in no way impaired by anything the defendant did, or omitted to do, and there is not in our opinion the slightest danger, judging from the past, that the defendant will in the future do or omit to do anything that will have the effect to impair the health of the plaintiff. One cause of the trouble between these parties is that the plaintiff seems to insist that her mother should live with her. To this the defendant objects, because he thinks much of the trouble between him and his wife has been caused by her mother. He has a legal right to insist on such objection; whether he ought to do so is not our province to say. But we think the primary cause of all the trouble is, judging from the letters each have written the other, that both have excitable temperaments and caustic tongues, neither of which have been curbed as the love and respect each should have for the other demanded.

But due inquiries should have been made as to these matters before marrying. The law does not authorize a divorce therefor. Patience, a due regard for the rights of each other, and a little of the affection they once no doubt had, will enable these parties to live happily together, and raise a family of children they both will take great pride in. We shall make no order in regard to the children, with the hope that all will soon be united, and the past forgotten. The decree of the district court is

REVERSED.