MARTHA E. EVANS, Appellant, v. EDWARD E. EVANS, Appellee.

Divorce: CRUEL AND INHUMAN TREATMENT: JUSTIFICATION. The exhibition of a quarrelsome and fault-finding disposition by a husband toward his wife, and the use of indecent and profane language by him in the presence of his wife and child, and charging the wife with improper conduct with other men, will not be deemed such cruel and inhuman treatment as to endanger the life of the wife, where it appears that the latter has so conducted herself toward other men as to provoke such conduct on the part of her husband, and there appears no sufficient reason why the parties may not resume their marital relation and duties, and live happily together.

*Appeal from Fayette District Court.*—HON. L. O. HATCH, Judge.

TUESDAY, MAY 19, 1891.

ACTION in equity for a divorce and other relief. There was a trial and judgment in favor of the defendant. The plaintiff appeals.—*Affirmed.*

*H. P. Hancock*, for appellant.

*John B. Kaye*, for appellee.

ROBINSON, J.—The plaintiff was married to the defendant in the year 1884. At that time she was seventeen years of age, and he was about five years older. The courtship was of brief duration, but they had been acquainted with each other from childhood. They have one child, a son named George. The parties lived together until June, 1889, when the plaintiff left her husband, and now seeks a divorce from him on the alleged ground that he has been guilty of such inhuman treatment as to endanger her life, and asks the custody of their child, and for alimony.

The evidence tends to show that the defendant has a bad temper and a jealous disposition. He sometimes used indecent and profane language in the presence of his wife and child. She does not complain of any physical violence to herself, but charges that he is quarrelsome and fault-finding ; that he continually used immoral and lewd language in the presence and hearing of the plaintiff and their child, calling her unchaste names, cursing her, accusing her of having sexual intercourse with other men, and threatening to take her life and that of the child ; that he compelled her to overwork in taking boarders, without providing her with domestic help. Other charges are made which need not be specified. The defendant admits having accused the plaintiff of improper conduct with other men, and pleads various matters in justification. There is much evidence which tends to sustain the charges of the plaintiff, and we are satisfied that the defendant was guilty of using indecent language to his wife

before she left him, and that he has made false charges against her since without sufficient cause.

It appears that the plaintiff and defendant lived together without any serious difficulty until the year 1889. In the beginning of that year the defendant employed one James Johnson, who was about the age of his wife, and later William Johnson, a brother of James ; both for a time living with the defendant. It is clear that the plaintiff not only permitted, but encouraged, improper conduct on the part of the young men towards her, and that her course was well calculated to arouse the jealousy and indignation of her husband. While it does not seem that she had any criminal relations with these men, yet she permitted them to scuffle with her, to kiss her, to put their arms around her, and to take other liberties of a like nature. She not only did not show any disapproval of such conduct, but seemed to try to provoke it. At times she went to a creamery where one of the Johnsons was at work, and there engaged in unseemly play with him, in the absence of her husband. The defendant does not claim that his wife has ever been guilty of unlawful sexual intercourse, and those who are most familiar with her conduct seem to think she was not guilty of any criminal act. Her course towards the Johnsons, and perhaps others, seems to have resulted from a love of fun, and a disregard of the ordinary rules of propriety, rather than from a desire to do actual wrong. But, however that may be, the conduct of the defendant of which she most bitterly complains was the natural result of what she did and permitted. Moreover, we do not think her life has been endangered by his conduct. While it has been in some respects coarse and brutal, yet she has shown such a lack of regard for his feelings, and for her own good name, that we cannot think her nature is so sensitive to harsh, and even obscene, language that her life has been endangered by hearing it. The facts disclosed do not entitle her to a divorce. *Knight v. Knight*, 31 Iowa, 451 ; *McKee v. McKee*, 77 Iowa, 464 ; *Gilbertson v. Gilbertson*, 78 Iowa, 755. The defendant

seems to be industrious, and to have provided well for his family. His treatment of the plaintiff was for the most part kind when he was not provoked by her improper language and conduct. His peculiarities of temper and disposition were known to her before their marriage. There is evidence which tends to show that but for the influence of relatives she would have returned to him. It is evident that she does not stand in fear from any threats he may have made, and there seems to be no sufficient reason for their remaining separated. So far as the record shows, they may resume their marital duties, and, by the exercise of mutual forbearance, outlive the follies of earlier years, and spend together the remainder of their lives in peace and happiness.

The judgment of the district court is AFFIRMED.