## D. H. L<small>ORING</small> v. L<small>ULA</small> L<small>ORING</small>.

### Delivered October 27, 1897.

**1. Divorce—Financial Failure Not Ground For.**

A wife is not entitled to a divorce on the ground that her husband is "financially a failure," under the statute authorizing a divorce for cruel treatment, outrages, or such ill treatment as to render it insupportable for the parties to live together. Article 2977, Revised Statutes, construed.

**2. Same—Cruel Treatment.**

A wife is not entitled to a divorce on the ground of cruel treatment, because her husband, without using any unnecessary force, prevents her from interfering while he is inflicting a proper chastisement upon their child.

A<small>PPEAL</small> from Mason. Tried below before Hon. W. M. A<small>LLISON</small>.

*Stapleton & Anderson*, for appellant.—The court erred in rendering judgment for plaintiff granting the divorce, because the said judgment is not supported by, but is contrary to the evidence. Byrne v. Byrne, 3 Texas, 340; Haymond v. Haymond, 74 Texas, 419; Simons v. Simons, 13 Texas, 473; Moore v. Moore, 22 Texas, 240; Wright v. Wright, 3 Texas, 168; Sheffield v. Sheffield, 3 Texas, 79.

*M. Fulton*, for appellee.—The assignment of error that the evidence is not sufficient it is unnecessary to notice, as the evidence discloses that the appellee was a refined and cultured woman, delicate in feminine feelings, honest, and virtuous, and the defendant's course and treatment

towards her was brutal, cruel, studied, and wanton; and his accusations against her were vicious, and made at such times and places as was best calculated to break down her womanly pride, and create suspicion among those she loved, her children, her sisters, and brothers.

NEILL, Associate Justice. — The appellee sued appellant for a divorce, alleging as grounds therefor that he was guilty of excesses, cruel treatment, and outrages towards her of such a nature as to render their living together insupportable. The specific charges are: (1) That in 1895 he left his wife and children, without money, provisions, or clothing, and remained from home eighteen months, during which time he failed to work or earn a support for his family, and during his absence sent appellee, at different times, only $35, and that after his return he has done no work, nor tried to, but has lived off the earnings of appellee. (2) That in December, 1896, he assaulted and committed a battery upon her in the presence of their children by choking her and twisting her arm and wrist. (3) That on November 5, 1896, and divers other times from July 6 to December 4, 1896, he, in the presence of their children, wantonly accused appellee of unladylike conduct, imputing to her a want of chastity, and accusing her of staying out at night and meeting men. (4) That on the 5th or 6th of January, 1897, he said to her in the presence of her sister and others: "If you don't stop this suit" (meaning this divorce suit) "and come home, I will ruin your character and get the place and the children, too."

The appellant answered by a general denial, and averred that since his marriage he has lived the life of a christian, moral, and upright man; that he has discharged his duty to his family to the best of his ability; that when he left home it was with the approval of his wife for the purpose of procuring work, he being unable to get employment in Mason; that he was not guilty of violence or cruelty towards appellee, and never accused her of unchastity or other improper conduct, or used language concerning her that would bear such imputation.

The case was tried without a jury, and a decree of divorce granted, the custody of their children and possession of all the community property awarded to the appellee. From this decree the appeal is prosecuted.

Opinion.—From the view we take of the case it is unnecessary for us to pass upon the assignment of error which complains of the refusal of the court to grant a continuance upon appellant's application.

Our statute provides that "a divorce by separation from the bonds of matrimony may be decreed, where either the husband or wife is guilty of excesses, cruel treatment, or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable." Rev. Stats., art. 2977. It is required that the decree of the court shall be rendered upon full and satisfactory evidence, independent of the confessions or admissions of either party. Art. 2979.

The evidence shows that the appellant and appellee were married in 1880, and lived peaceably and harmoniously together, both contributing by their labor to the support of the family and maintenance of the household, until in January, 1895, when, unable to procure work in the town where he resided, appellant left his home in quest of employment, seemingly with his wife's sanction and concurrence. While absent he failed in his efforts to procure such employment as would enable him to contribute much to the maintenance of his wife and children, and in consequence the burden of the support of the family fell upon the appellee, who, like a good wife and mother, assumed the burden as a duty and discharged it as best she could, and by her labor, with a little assistance from relatives and small sums, aggregating $35, sent her at different times by her husband, maintained the family and kept the two children at school during her husband's absence. Appellant returned home in August, 1896, and was kindly received by his wife, and he again tried to secure employment by which to support his family, but failed. That his repeated efforts to obtain work were made in good faith, the record in this case leaves no doubt. Nor can it be doubted from the record before us that he is a moral man, and has endeavored to make a good husband and kind father, but, as some of the witnesses put it, he seems to be "financially a failure." If he is such a failure, it is a misfortune, rather than a fault, and that this misfortune rests upon and burdens his wife and children is a pity, but as long as it arises from no fault of his, it is no ground for divorce, nor should he be bereaved of his children in consequence of it. Many men are failures financially who earnestly and truly endeavor to make good husbands and fathers, and succeed in their efforts in this regard better than others who are financially successful.

A short time after appellant's return to his home, trouble began to brew between him and his wife, they ceased to occupy the same room (for what reason it does not appear), and he was heard by his children talking as though he might be scolding her, and she would be seen crying, though nothing is known to have occurred that any one would even dream of being a cause for divorce until in November, 1896. One night during that month appellant went with his two little daughters, Anna and Mabel, to prayer-meeting, his wife staying at home. Upon their return Anna asked her mother where she had been, and she replied, to Mrs. Hoffman's. On the next morning, after her mother had gone to the store where she was employed as a clerk, Anna saw her father coming up crying from a branch that runs back of their dwelling. When he reached the house he requested her to go to the store and bring her mother. She went, and returning with her found her father still crying. Upon being asked thrice by his wife what he wanted, he said, "I will tell you when Anna and Mabel go to school." She said to him, "No, speak out now." Then he said, "You were not at Mrs. Hoffman's last night, but were down on the branch doing bad things with other men. I have been down there and saw your tracks in the sand." The appellee

replied, "It is not so," and went into her room and began to cry. The appellant, who must have heard his wife tell their· daughter the night before where she had been, had been informed that her statement as to her whereabouts was not true, and, from the testimony before us, it seems that his testimony was correct. Under these circumstances it was his right, and perhaps his duty as a husband and father, to inquire and ascertain the .truth. If, in the pursuit of his inquiry, his suspicions were excited, and his actions show that they were, and· not without cause, it was his duty to make them known to his wife, and give her an opportunity of telling him truly where she had been. Confessedly she had left her house when her husband and children were at prayer-meeting. She knew where she went; her husband did not, but only he knew she had not been where she said she had. When she saw her husband in tears she sought no explanation of his distress, and forced him in the presence of their daughters to tell why he sent for her. When he tells her, she simply utters a general denial, when, if her husband's conjecture is unfounded, a true statement as to where she had been would have restored his peace of mind by establishing the innocence of his wife. If she regarded the happiness of her husband, or the reputation of her family, she should have spoken then, and not in a divorce suit. The accusation of her husband, if under the circumstances it can be deemed an accusation, was not made in anger nor with malice, nor did he wish to injure her by making it in the presence of their children, or in the hearing of any one except the appellee. He never, so far as the record shows, breathed his suspicions to any one afterwards, but it was the appellee alone who published them to the world in bringing this suit. When the appellee was contemplating bringing this suit, her husband went out to see her at her brother-in-law's, and endeavored to dissuade her from instituting ·it, and while discussing the matter said to her in the presence of her sister: "If you bring the suit, I will ruin your character and get the place and the children, too." This remark must be taken and construed in the light of circumstances under which it was made. He could not obtain a private interview with his wife, and what he said had to be said in the presence of another—his wife's sister. The appellee would have the remark taken as an imputation against her chastity. No such construction can be placed upon it. Under the strongest construction that can be given it against appellant, it can only be regarded as a threat as to what he would do in the event she persisted in instituting the suit, and can not be tortured into an imputation against his wife's chastity.

As has been well said: "Of all the treasures cherished by a woman, her reputation for chastity is· the dearest. It is the immediate jewel of her soul, and when an attempt is made by her husband, who should be her protector, to rob her of it, cruelty on his part has reached its utmost limit." Jones v. Jones, 60 Texas, 460. But in order that such charge shall have the effect of legal cruelty, it must be made without just cause, and in such case the accusation is presumed to be malicious. A wife

can not complain of the charge if she aroused her husband's suspicions by her indiscreet conduct. Evans v. Evans, 82 Iowa, 462; 48 N. W. Rep., 809; Beckley v. Beckley, 23 Ore., 226, 31 Pac. Rep., 470; Boon v. Boon, 12 Ore., 437; Kennedy v. Kennedy, 73 N. Y., 369; Blurock v. Blurock, 4 Wash. St., 495, 30 Pac. Rep., 637. For if the words are provoked by her conduct, she can not obtain a divorce, as the remedy is in her power, if she will mend her ways, or explain her conduct in such a way as will remove the grounds of the suspicions which provoked the words. Nullmeyer v. Nullmeyer, 49 Ill. App., 573.

The party suing for a divorce must show ill treatment on the part of the other of such a nature as to render their living together insupportable. If the plaintiff has wrongfully provoked such treatment as a natural consequence of her acts, she should not be permitted to predicate a divorce upon it. For in such a case, the treatment is the consequence of her fault, and by changing her conduct she may avoid the treatment it produced, and make living with her husband at least supportable. It is clear from the testimony in this case that the appellee provoked the assault, if such an assault was made, by her own conduct. When her husband was chastising one of their children, she pushed him and tried to pull the child away from him. The chastisement being administered was not improper, and he was justified in using all reasonable and necessary force to protect himself against her interference in the proper chastisement of the child. Gorman v. State, 42 Texas, 221. The husband is the head of the family, and if his wife interferes with the moderate correction of their child, such interference being unwarranted, she can not complain of the result of a scuffle which ensued. Reed v. Reed, 4 Nev., 395; Beckley v. Beckley, 23 Ore., 226, 31 Pac. Rep., 470; Maben v. Maben, 72 Iowa, 658, 34 N. W. Rep., 462. It does not appear that in this scuffle the appellant used more force than was necessary, or that his wife sustained any injury from it. She went to her place of business as usual, and no evidence of injury is shown by any person who saw her on that day.

We can not bring ourselves to believe that the evidence in this case is such as entitles the appellee to a divorce. It falls far short of being such "full and satisfactory" testimony as is required to show that the appellee has been guilty of such excesses, cruel treatment, or outrages towards his wife as would render their living together insupportable.

We are not asked by appellant to render judgment in his favor, and as upon another trial both parties can testify, we will reverse the judgment of the District Court and remand the case for another trial.

*Reversed and remanded.*