[Filed October 29, 1885.]

## DUENNA BOON *v.* H. D. BOON.

Divorce — Custody of Minor Children. — A decree of divorce which fails to provide for the care and custody of the minor children of the marriage, if there be such, is defective.

Id. — Cruel Treatment — What Necessary to Constitute. — The mere fact that a husband has been imprudent and unreasonable, or jealous, does not necessarily constitute a ground for divorce. It must appear that he has evinced a malignant desire to annoy and harass his wife.

Id. — The evidence reviewed, and held not to sustain a charge of cruel and inhuman treatment, rendering life burdensome.

Barion County. Both parties appeal. Reversed and bill dismissed.

*M. F. Bonham,* for Duenna Boon.

The insinuations, and virtually direct charges made by the defendant against the plaintiff of unchaste conduct on her part as a wife, persisted in almost continuously for a number of years, are alone sufficient ground for divorce. (*Smith* v. *Smith,* 8 Oreg. 101 ; *McMahan* v. *McMahan,* 9 Oreg. 525.) The court below granted the plaintiff a divorce, but made no decree in reference to the real estate of the defendant. In this the court erred in a matter where it had no discretion to refuse the prayer of plaintiff. (Oreg. Code, p. 210, § 495.) The court below erred in failing to decree to plaintiff the custody of the minor children named in complaint, and a sum or sums of money in gross or installments for the maintenance and education of said children. (Oreg. Code, p. 211, § 497.)

*Geo. H. Burnett,* and *Mark A. Fullerton,* for H. D. Boon.

The complaint alleges that defendant found fault with plaintiff, and insinuated that she went out into town to meet gentlemen

for unlawful purposes. The allegation is not sustained by the evidence. The most that is shown is that defendant made inquiries as to his wife's conduct with other gentlemen, and that in every instance they were based either upon facts or on reports to which there was good foundation. An accusation of crime is not cruelty unless it is maliciously made. (*Simons* v. *Simons*, 13 Tex. 468; *Small* v. *Small*, 57 Ind. 568.) Divorce is a remedy provided for an innocent party; if what is complained of as cruelty is the result of complainant's own misconduct, it will not furnish ground for the proceeding. (*Knight* v. *Knight*, 31 Iowa, 451; *Von Glahn* v. *Von Glahn*, 46 Ill. 134; *Skinner* v. *Skinner*, 5 Wis. 449; *Richards* v. *Richards*, 37 Pa. St. 225.) A wife is not entitled to a divorce on the ground of cruel treatment, when such treatment appears to have been of such a character as to furnish her no reasonable grounds to apprehend physical danger by a continuance of the marriage relations. (*Knight* v. *Knight, supra.*) The acts of cruelty, if proved, were condoned by the cohabitation of the parties. (*Phillips* v. *Phillips*, 27 Wis. 252; *Sullivan* v. *Sullivan*, 34 Ind. 368.) A divorce should not be granted between husband and wife who continue to cohabit, and separation should be alleged in the complaint and proved on the trial. Cohabitation will be inferred from the living together of husband and wife; and a condonation will be inferred from cohabitation, when the contrary does not appear. (*Burns* v. *Burns*, 60 Ind. 259.) Had facts tending to show personal indignities been proven, plaintiff's case would fail, because she has not shown that that condition exists which would render her life burdensome. That life has been rendered burdensome is not inferred from facts that go to establish personal indignities. (*Cline* v. *Cline*, 10 Oreg. 474.)

THAYER, J.—This appeal is from a decree in a suit brought by Duenna Boon against her husband, H. D. Boon, for a divorce. The Circuit Court granted Mrs. Boon the divorce, but did not decree her any portion of her husband's property, nor make any provision for the custody and support of the children of the parties, nor grant alimony to the wife. Both

parties appealed, the plaintiff from a part of the decree, the neglect to grant her the third interest in the defendant's real property, provide for the care and custody of the children, and decree the recovery of an adequate sum of money for their support; the defendant from the whole decree.

Section 495 of the Civil Code provides that "whenever a marriage shall be declared void or dissolved, the party at whose prayer such decree shall be made shall in all cases be entitled to the undivided one third part, in his or her individual right, in fee, of the whole of the real estate owned by the other at the time of such decree, in addition to the further decree for maintenance provided for in section 497; and it shall be the duty of the court, in all such cases, to enter a decree in accordance with this provision." Said section 497 empowers the court to further decree, for the care and custody of the minor children, and for the recovery from the party in fault, such an amount of money in gross or installments as may be just and proper for such party to contribute to the maintenance of the other. This section is only permissive in form, but the former one is imperative. I think, however, that the decree in such a case would be imperfect unless it provided for the care and custody of the minor children, if there were any. The decree therefore should be modified if allowed to stand. The defendant claims that it should not stand, but that it should be reversed upon the grounds that the allegations of the complaint and proofs submitted do not warrant it.

By the laws of this State, a dissolution of the marriage contract may be declared at the suit of the injured party for certain causes, among which is, for cruel and inhuman treatment, or personal indignities rendering life burdensome. The suit in this case was instituted upon that ground, and it is claimed upon the part of the wife that she has been subjected to that character of treatment by her husband.

It appears that the parties married in 1871; that they had five children, the oldest aged twelve years, and the youngest aged three years, at the time that the suit was commenced. The husband has been in business, keeping a book store, and is still

engaged in that business, and has been successful, financially, having accumulated a reasonable competency; that he has supported his family comfortably, and that the wife and children have a good, comfortable home. The husband has been unfortunately addicted to drinking to excess at long intervals, but it has not incapacitated him from attending to his affairs, or rendered him morose or ugly. The wife says herself, "that he is harmless on such occasions." She, however, claims that for a number of years past he has manifested a jealous disposition towards her when she would speak to other gentlemen, and find fault with her when she would go out in town, for so doing; that upon such occurrences he would taunt her by inquiring whether she had not been to some disreputable place or called on some disreputable person. She says that for some time past she has been in poor health, has been under medical treatment for disease peculiar to females, and that her physician had advised her that unless her husband would, to a great extent, refrain from sexual indulgence she could not be successfully treated, but that against her protest, and the advice of the physician, the husband had persisted in sexual intercourse with her to such an extent, as she was advised by her physician, that it had greatly injured her health and endangered her life.

The proofs in the case were mainly directed to the question of the husband's jealousy, and his conduct connected therewith. A number of charges of misconduct on his part are made in the evidence, but which he has explained away or denied. The charges in the complaint are of such a character that if the proof showed that the husband had been imprudent, unreasonable, and persistent, it would not necessarily establish "cruel and inhuman treatment or personal indignities rendering life burdensome."

Jealousy on the part of a husband may arise from a strong attachment for his wife, from high sense of honor for her reputation, and a desire that she shall be and appear perfect. Again, it may be incited by imprudent conduct upon her part. She may so demean herself as to attract attention and cause comment, and nothing is more calculated to exasperate a sensitive man than that. Whenever, therefore, his conduct has resulted from

the influences referred to, and has not been too unreasonable and violent, it could not be deemed "cruel and inhuman." It is where he evinces a malignant desire to vex, annoy, and harass the wife, that he could be justly chargeable with the character of conduct referred to. The husband who provides a suitable home for his family, and a reasonable and proper maintenance for his wife, is not liable to be actuated by malicious motives in his conduct toward her.

I assume in the outset that the plaintiff has been to the defendant a virtuous wife; but it cannot be claimed, in the light of the evidence, that she has always been prudent in her conduct, and amiable in her temper. Her riding with a certain young man upon two occasions, her visiting his place of business, and her sitting upon the porch with another young man an unseemly length of time, while staying at a certain summer resort, were acts calculated to excite comment, and did occasion remark; and reports were conveyed to her husband regarding her conduct in those particulars. The acts in themselves may have been, and no doubt were, entirely innocent, but were not prudent. These reports, coming to the husband, and several anonymous letters that evidently some vile wretch sent him through the postoffice and otherwise, warning him of her infidelity, seemed to have occasioned all the alleged misconduct on his part complained of. And it is no wonder if he did, under the circumstances, become excited and aggressive. What husband would not, in such a case, demand an explanation from his wife—would not with great solicitude inquire what it meant, and would not enjoin upon her a strict observance of highly proper conduct. The evidence tends to prove that he set a watch upon her movements. She certainly could not complain of that, and, as I remember the evidence, did not. The information he had received was well calculated to excite suspicion, and as long as he continued his investigation in good faith, for the purpose of ascertaining the truth or falsity of the reports, he acted properly. His own honor and the honor of his children was involved in the affair.

The counsel for the plaintiff animadverted with much stress upon the fact that he did not destroy at once the anonymous

letters he received. It is true that those letters were indecent and unfit to be read, and the first impulse of virtuous indignation would naturally be to destroy them. But their author was guilty of a crime. Whoever he was, he committed an offense when he transmitted obscene matter of that character through the United States mails. Both the plaintiff and defendant manifested a desire to detect the guilty person. Now, without the letters, there would be no evidence of the offense. In view of that it would be necessary to preserve them, and it may be that they were preserved in consequence of that fact.

Said counsel further claims that the defendant " believed the contents of the letters to be true; that he taunted the plaintiff in regard to matters contained in one of them." The matter referred to is the statement in the letter that she was accustomed to meet, men at their barn, and she testifies that defendant came home in haste one morning, and said he was a going to have his barn insured. She says that, "at the time he did not say why, but she found out that he had been warned in the letters; that he was afraid they would have a cigar and set the barn on fire." How she found this out does not appear, and I imagine that she only inferred it. The inference may have been correct, or may not. The defendant might not have had that circumstance in view at all when he made the remark, but if he had, it very probably was intended as facetious.

She testified, in answer to this question, " did your husband ever accuse you of unchastity or improper or criminal relations with other men?" that he never did; so that she could not have regarded the remark referred to in any such light. I am unable to discover in the case any sufficient proof of cruel and inhuman treatment as alleged in the complaint, nor does the plaintiff seem to claim it. When Dr. T. L. Golden asked her, after the suit was commenced, what were her grounds for expecting a divorce, her answer was, "that Mr. Boon objected to her going where she pleased, and with whom she pleased, and that she thought a woman had a perfect right to do as she pleased, and go with whom she pleased." It may be inferred from this that she regarded the marriage relation with her husband as too much of

a restraint upon her free course. The charge that the defendant unreasonably insisted upon having intercourse with her seems to be wholly unsupported by the evidence. It appears, also, from the proofs that the plaintiff is unfortunate in her disposition and temper. This is probably occasioned from her sickness. A witness who had for more than a year lived in the family says: "I have seen her pout; be mad; I hardly ever knew what she was mad at." "I have seen her pout for a week." Besides, she seems to have been very intimate with a neighbor lady, to whom she has been accustomed, I should infer, to communicate her family affairs. These circumstances have very likely served, to a great extent, to create dissension and antagonism between her and her husband. Amity and concord cannot long continue after the family confidence is shared with outside parties.

I have not referred to the conduct of the plaintiff as a justification of the acts of the defendant. He very probably has done wrong in many instances, but I think we have a right to consider all the circumstances surrounding the case. (*Harper* v. *Harper*, 29 Mo. 301.)

The plaintiff's counsel says that these parties cannot live together as husband and wife should. This, of course, the court has nothing to do with. It can only determine whether the evidence establishes good grounds for a separation, and if it believes that the charges alleged in the complaint have not been sufficiently proved, it can do no less than deny the relief prayed. As I look upon the matter, the court would assume a grave responsibility in the premises if it granted the divorce. The parties to the suit are not the only ones interested in the affair. The welfare of five minor children is to be taken into consideration. What is to be done with them in case of a separation? If the care and custody of them was given to the wife, provision would necessarily have to be made for their support. In that event the accumulation of the parties would have to be divided, the management of a great portion of it confided to the wife, who, in all probability, has had no experience in such matters, and the husband would be left with a remnant, disheartened and discouraged. The inevitable result would be that the property,

now amply sufficient to support the family, and which, if prudently managed, will continue to increase, would be frittered away, and destitution be the consequence. I do not believe it necessary to produce such a state of things in order to remedy evils that, comparatively, are trifling. The parties can live and cohabit happily; they have no occasion to change their home from an eden, as it might be, into a pandemonium, and I have faith to believe that if left to themselves, they will adjust their affairs much better than the court could if it were to undertake it. The effort, in my opinion, would leave them in a much worse condition, and imperil the happiness and welfare of innocent children. Such a course is contrary to my judgment, and, I believe, abhorrent to the feelings of everyone who views the matter impartially. The law does not sanction such interference in any case unless the necessity is absolute. It will dissolve the marriage relation when the conduct of one of the parties towards the other is cruel, and inflicts such a degree of pain of body or mind as to render life burdensome.

After a due consideration of all the facts in this case, I am convinced that the proofs do not establish the charge made by the plaintiff in her complaint, and that it ought, therefore, to be dismissed. Some provision should, however, be made in regard to the costs and expenses of the litigation, which can be considered before entering the decree.

Decree below reversed and bill dismissed.