Argued 2 December, decided 14 December, 1903.

## BENFIELD *v.* BENFIELD.

[74 Pac. 495.]

DIVORCE—CRUELTY CONSISTING OF ABUSE AND THREATS.

1. Threats of personal violence uttered with an apparent intention of executing them, coupled with present ability to do so, and abusive language, may constitute cruel and inhuman treatment, for they may incite such fear of bodily harm as to destroy the domestic relationship.

DIVORCE—EVIDENCE OF CRUELTY.

2. Repeatedly seizing a wife by the hair, while flourishing a knife, accompanied by threats to "knock daylight through" her, and to "fix" her, varied by addressing her as "a dirty old sow," and slapping her, all without provocation or justification, constitutes cruel and inhuman treatment justifying a divorce.

DIVORCE.

3. The effect of awarding to the wife in a decree of divorce an interest in her husband's realty, under Section 511, B. & C. Comp., giving to the party securing the divorce an undivided third of all the real estate owned by the other, is to make them thereafter tenants in common of all such land in the proportion of one-third to two-thirds.

From Multnomah: JOHN B. CLELAND, Judge.

Divorce proceeding by Charlotta Benfield against Frederick Benfield, which was dismissed, resulting in this appeal.                                                    REVERSED.

For appellant there was a brief over the name of *A. R. Mendenhall*, with an oral argument by *Mr. William N. Gatens.*

No brief or appearance for respondent.

No brief or appearance for the State.

MR. CHIEF JUSTICE MOORE delivered the opinion.

This is a suit for a divorce, instituted by the wife on the ground of cruel and inhuman treatment and personal indignities rendering life burdensome. The defendant, having been personally served with the process, failed to appear or answer, whereupon, the State appearing by the district attorney, a trial was had, and the suit dismissed, from which decree the plaintiff appeals.

The testimony shows that the parties were married in Wisconsin, and removed to this State in 1870, where the

defendant owns a farm of 80 acres near Corbett, upon which she and their children reside. In September, 1902, the defendant went away from his home, leaving the farm in charge of his sons, but he occasionally returned to look after his stock. During one of these visits he assaulted the plaintiff, in speaking of which she testified that on December 25, 1902, he held her by her hair with one hand, having a knife in the other, called her a "dirty sow," slapped her, swore he would kill her, and that he would knock daylight through her if she did not leave home, telling her that her time had come. The plaintiff's son corroborates his mother in these particulars, and says that his father always cursed, abused, slapped, and hit her, and that on Christmas morning, 1902, having heard her scream, he went to her bedroom, and found his father holding her by her hair, and having in one hand a butcher knife ; that his father called his mother all the evil names he could think of, saying, " I will fix you this trip "; that she did not start the trouble; that when she said anything to him he would reply, "God damn you," and slap her; that his father wanted to drive his mother away ; and that the family had always been afraid to leave her alone, thinking he might kill her. R. W. Larsen, as plaintiff's witness, testified that about two months prior to the trial the defendant had used vile language in the presence of the plaintiff, calling her indecent names, and, jumping up from a chair which he occupied, he went towards her, but the witness could not say whether or not he threatened to strike her. The foregoing constitutes substantially all the testimony given at the trial, and it remains to be seen whether or not it is sufficient to entitle the plaintiff to a decree of divorce.

1. Threats evidently intended to be executed, and so understood by the injured party to the marriage contract, inducing in the mind of the latter a reasonable apprehension of danger to life or health, rendering it extremely

difficult to discharge the duties of the domestic relation, constitute such cruel and inhuman treatment as to justify a decree of divorce in a suit instituted for that purpose: Stewart, Mar. & Div. § 268; *Beckley* v. *Beckley*, 23 Or. 226 (31 Pac. 470); *Ryan* v. *Ryan*, 30 Or. 226 (47 Pac. 101); *Hughes* v. *Hughes*, 44 Ala. 698; *Powelson* v. *Powelson*, 22 Cal. 359; *Odom* v. *Odom*, 36 Ga. 286; *Freeman* v. *Freeman*, 31 Wis. 235. It will be remembered that plaintiff's son testified that his father always cursed, slapped, and hit his mother, and, though it appears that only one aggravated assault had been committed upon her by the defendant, cruel and inhuman treatment may consist of abusive language and improper conduct as well as personal violence: *Cole* v. *Cole*, 23 Iowa, 433; *Sackrider* v. *Sackrider*, 60 Iowa, 397 (14 N. W. 736).

2. It is probable that the lower court refused to grant the relief sought upon the supposition that the suit was collusive, but we are unable to discover any intimation thereof in the transcript, and conclude that the testimony shows that plaintiff was without fault, and is entitled to a decree in her favor.

3. It is alleged that the defendant owns the southeast quarter of the southeast quarter of section 26, and the northwest quarter of the northeast quarter of section 35, in township 1 north of range 4 east of the Willamette Meridian, and the prayer of the complaint is that the south half of the latter 40-acre tract, which includes the house and improvements, may be decreed to the plaintiff. The statute prescribing the effect of a decree of divorce, as far as deemed applicable, is as follows: " Whenever a marriage shall be * * dissolved, the party at whose prayer such decree shall be made, shall in all cases be entitled to the undivided one-third part in his or her individual right in fee of the whole of the real estate owned by the other at the time of such decree, * * and it shall be the

duty of the court in all such cases to enter a decree in accordance with this provision": B. & C. Comp. § 511.   It is impossible to determine from the transcript the relative value of the twenty acres containing the house and improvements as compared with the sixty acres of unimproved land, and it may be that the part desired by plaintiff exceeds one-third the value of the premises owned by the defendant.   In *Rees* v. *Rees*, 7 Or. 47, in a suit to dissolve the marriage contract, it was held that the court could not decree that the party in whose favor the divorce was granted should be entitled to more than an undivided one-third of the real estate owned by the other.   In dissolving the marriage relation, the court, being empowered to award to the prevailing party an undivided part of the real estate owned by the other, is thereby impliedly prohibited from decreeing to either party any part of the premises in severalty, and hence cannot partition the land in a suit of this kind.   It will thus be seen that the effect of a decree of divorce upon the real property of the defeated party, when a part of the premises is sought to be recovered, is to sever the marital ties and to create the relation of tenants in common.   The decree of the lower court will therefore be reversed, and one entered here dissolving the bonds of matrimony heretofore existing between the plaintiff and the defendant, and awarding to her an undivided one-third part in her own individual right in fee of the real property hereinbefore described.

REVERSED.