Decided 21 August, 1906.

## HUFFMAN *v.* HUFFMAN.

86 Pac. 593.

POINTS AVAILABLE ON COLLATERAL ATTACK.
1. In a collateral attack on a judgment or decree only the existence of jurisdiction in the trial court can be considered.

ORIGIN OF RIGHT TO AWARD ALIMONY.
2. The jurisdiction of equity courts in Oregon to award alimony must be found in the statutes, the court not having any such jurisdiction as an incident of its control over divorces.

EXTENT OF RIGHT TO GRANT ALIMONY.
3. Under Section 513, B. & C. Comp., equity courts may award alimony to either spouse upon the dissolution of the marriage state, which jurisdiction is broader than that of the common law courts of England.

DIVORCE—ALLOWANCE FOR SUPPORT OF WIFE.
4. Under Section 511, B. & C. Comp., providing that upon the dissolution of a marriage the successful party shall be entitled to a specified undivided portion of all the real estate owned by the other party, and Section 513, authorizing the granting to the innocent party of appropriate alimony, a court has not power, upon granting a divorce to a wife, to award her, in lieu of alimony, the possession of land on which the husband was maintaining a residence with the intention of obtaining title thereto from the government. The statute here authorizes the allowance of money only, and the power of the court is measured by the terms of the statute.

POWER TO VACATE JUDGMENT AFTER CLOSE OF TERM.

5. Superior courts possess power at all times, regardless of terms, to vacate void judgments and decrees, and they should do so whenever attention is called to such orders: *Deering* v. *Quivey*, 26 Or, 556, distinguished.

From Harney : GEORGE E. DAVIS, Judge.

Statement by MR. JUSTICE MOORE.

This is an application to vacate a part of a decree. The plaintiff,. Wm. D. Huffman, commenced a suit in the circuit court for Harney County against the defendant, Fannie E. Huffman, for a dissolution of the marriage contract then existing between them and for the custody of their three sons. The defendant answered the complaint, denying the charge imputed to her, and alleged facts as grounds for a divorce in her favor, and as incident thereto sought to obtain the custody of such sons and of two daughters, minor children of the union, and asked that the plaintiff be restrained from disposing of any of his estate. An injunction as prayed for was issued and served on the plaintiff, who in violation thereof pretended to transfer to his mother, Mrs. N. A. Ridenour, the improvements on and possession of certain public land in that county, which interests she feigned to assign to E. St. Clair. The defendant thereafter filed a supplemental cross-complaint, making Mrs. Ridenour and St. Clair parties, alleging that for the purpose of defrauding her, they had procured such assignments without consideration, and prayed that the simulated transfers might be vacated and the possession of the land given to her as a home where she could care for her children. St. Clair alone answered, denying the material allegations of the supplemental pleading, and averring that he secured possession of the land in good faith, for a valuable consideration, and without knowledge of any fraud connected with the transfer. The plaintiff did not appear and was not represented by counsel at the trial, and from the testimony taken thereat the court

found that the defendant was entitled to a divorce, to the custody of the children, and that the pretended transfers were fraudulent and should be vacated. It was further found as alleged in the supplemental cross-complaint that the improvements referred to were purchased by the plaintiff with money that was earned by him and the defendant. Based on such findings and in accordance therewith, a decree was passed November 5, 1901, setting aside the land with the improvements to the defendant for her maintenance and for the support of her children. No appeal was taken from that decree and the time for reviewing it has expired. The plaintiff, however, on July 20, 1905, moved to vacate that part of the decree that relates to a disposition of the public land, on the ground that it was made without jurisdiction, but the motion was denied, and he appealed.                    REVERSED.

For appellant there was a brief over the names of *King & Brooke* and *Biggs & Biggs*, with an oral argument by *Mr. William Henry Brooke.*

I. Where the court has no jurisdiction to make an order, or the order or decree entered is void, the proper procedure is to move the court to vacate and set aside the order or decree and appeal from the ruling thereon : *Hoover* v. *Hoover*, 39 Or. 456 (65 Pac. 796); Black, Judgments, § 303; 2 Ency. Pl. & Pr. 95, 96; *Livermore* v. *Campbell*, 52 Cal. 402; *Smith* v. *Gilson*, 14 Wis. 507; *Johnson* v. *Curtis*, 51 Wis. 595; *Hoh* v. *Hoh*, 84 Wis. 378; *Piper* v. *Johnson*, 12 Minn. 60; *Adlinger* v. *Pugh*, 57 Hun, 181.

II. The court possesses an inherent power to vacate entries in its record of judgments, decrees, or orders, when void, or rendered without jurisdiction, either during the term the entry was made, or at any subsequent term : *Ladd* v. *Mason*, 10 Or. 308; *Hoover* v. *Hoover*, 39 Or. 456 (65 Pac. 796); Black, Judgments, § 308.

III. The court could not award anything but money as alimony (B. & C. Comp. § 513), and, if it could, its power would be limited to property owned by the party at fault at the date of the decree: B. & C. Comp. § 511; *Rees* v. *Rees*, 7 Or. 48; *Weber* v. *Weber*, 16 Or. 163 (17 Pac. 866).

IV. In any event, the ownership of this land must finally be determined by the authorities of the United States, so there is no propriety in any action regarding it by the State courts: *Hafemann* v. *Gross*, 199 U. S. 342 (26 Sup. Ct. 80); *Hershberger* v. *Blewett*, 55 Fed. 170; *Huffman* v. *Smyth*, 47 Or. 573 (84 Pac. 80).

For respondent there was a brief by *Mr. William Miller* to this effect.

1. This is an equitable proceeding and plaintiff's past conduct in this divorce proceeding should exclude him from any hearing now. He disposed of this land and the improvements to defraud his wife, as the court found, and failed to comply with the order to pay suit money.

2. The court below had full jurisdiction of the parties, the suit and the property, and as no appeal was taken from the decree it is final: *Hoover* v. *Hoover*, 39 Or. 459 (65 Pac. 796.)

3. Huffman having voluntarily sold all interest in the premises. he thereby abandoned his settlement and barred himself from ever claiming any interest therein: *Dashney* v. *Paggoner*, 27 Land Dec. Dep. Int. 319.

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is contended by the defendant's counsel that, as the plaintiff voluntarily transferred his right of possession to the public land, he thereby relinquished all claim to the premises; and, this being so, no error was committed in denying the motion. The court, in granting the divorce, vacated as fraudulent and void the pretended assignments on the assumption that they were made in secret trust for the plaintiff's use. To allow him now to assert that the

transfers were invalid might seem like permitting him to take advantage of his own wrong; but, however this may be, as the determination of the ultimate right to the land necessarily devolves upon the officers of the land department of the United States, it is proper to leave to them the decision of the question whether or not the plaintiff can hereafter come into their tribunals with clean hands. Besides, the consideration by this court of the legal principle suggested would be equivalent to reviewing the merits of the original decree, and, as no appeal was taken therefrom, the only question that can arise at this time is an alleged want of jurisdiction.

2. Examining the principal inquiry, the appeal challenges the right of the court to provide for the maintenance of the defendant by setting apart to her the possession of the real property specified. To understand the principle whereby alimony was given in divorce proceedings, a cursory examination of the rules originally applicable thereto in the country from which we derive the principles of common law may not be deemed inappropriate. In England, prior to 1858, no absolute judicial divorces were granted; but the ecclesiastical courts, assuming jurisdiction of the marital relation, permitted legal separations, which were known as "a mensa et thoro": Stewart, Mar. & Div. § 200. As an incident of such divorces and based on the husband's duty to support the wife, the church courts granted her, when she was not in fault, alimony, which consisted of an allowance that was measured by the social standing of the parties, proportioned by the wife's necessities and to the husband's financial ability, usually amounting to one-half of their joint income; but, if there were children of the union, the allowance was generally limited to one-third of such income: Stewart, Mar. & Div. § 362. The ecclesiastical courts having been abolished during the Commonwealth, the authority to award alimony

was expressly conferred upon the equity judges, whose decrees in compliance therewith were ratified after the Restoration by an act of Parliament: 1 Bishop, Mar. & Div. § 1394. The law of England relating to marriage and divorce was brought by the colonists to this country, where the ecclesiastical courts were never recognized as possessing authority to allow alimony. As these immigrants did not bring their courts with them, the law adverted to, and which is here known as the unwritten or common law of the several States, remained in abeyance until called into activity by the creation of tribunals on which such jurisdiction was directly or by implication conferred: Bishop, Mar. & Div. §§ 116, 121. A few courts of last resort in the United States have maintained that a grant of power to sever the marital relation carries with it by necessary intendment authority to allow permanent alimony in the absence of any enactment to that effect: Stewart, Mar. & Div. § 363. The great weight of judicial utterances, however, is to the effect that all authority to award alimony on decreeing a dissolution of the marriage must be found in the statute expressly conferring the right, which legislation is in general declaratory of the ecclesiastical law: 2 Bishop, Mar. & Div. § 1039; Stewart, Mar. & Div. § 364; *Weber* v. *Weber*, 16 Or. 163 (17 Pac. 860); *Houston* v. *Timmerman*, 17 Or. 499 (21 Pac. 1037, 4 L. R. A. 716, 11 Am. St. Rep. 848.)

3. Our statute relating to the land owned by married persons which is required to be divided in certain instances when they are divorced, and providing for the maintenance of the innocent party, is in effect as follows: Whenever a marriage shall be declared void or dissolved, the party at whose prayer the decree is given shall be entitled to the undivided one-third part in his or her individual right in fee of the whole of the real estate owned by the other at the time of the decree: B. & C. Comp. §

511. In addition to such share of the real property, the court is empowered, whenever a marriage is declared void or dissolved, to provide for the future care and education of the minor children of the marriage, giving their custody in preference to the party not in fault, and for the recovery from the adverse party, when not allowed the custody of the children, such an amount in money as may be just and proper to contribute for such purposes, and also for the further recovery of such an amount of money as may be just and proper for the party in fault to bear toward the maintenance of the other party : B. & C. Comp. § 513. Under the ecclesiastical law the wife only was entitled to alimony, and as a condition precedent thereto a valid marriage of the parties was indispensable : Stewart, Mar. & Div. § 362. A comparison of that law with our enactment on the subject discloses that in this State the husband as well as the wife may secure maintenance, and this, too, when the marriage is declared void, so that our statute is an enlargement of the ancient law : *Henderson* v. *Henderson,* 37 Or. 141 (60 Pac. 597, 61 Pac. 136, 48 L. R. A. 766, 82 Am. St. Rep. 741).

4. In construing the first provision of the statute referred to, it has been held that in granting a divorce a court cannot set off to the innocent party more than an undivided one-third of the real property (*Rees* v. *Rees,* 7 Or. 48), nor apportion any part of such land in severalty ; the decree making the parties tenants in common of the premises: *Benfield* v. *Benfield,* 44 Or. 94 (74 Pac. 495). Where the husband conveyed real property to a third person for his own use, to prevent the marital rights of his wife from attaching thereto in case she instituted a suit for divorce, it was ruled that the equitable estate of the husband in the premises made him the "owner" of the land, within the meaning of that term as used in the statute, and when the trustee was made a party to such suit the court pos-

sessed power to divest him of the legal title and to invest the wife therewith : *Wetmore* v. *Wetmore*, 5 Or. 469. In the case at bar the plaintiff was not the "owner" of the public land, the possession of which was given to the defendant, nor did he have such an equitable estate therein as could be reached or affected in any manner by the decree rendered. It will be remembered that the court, adopting the averments of the supplemental cross-complaint, found that the improvements on the public land were purchased by funds jointly earned by the plaintiff and the defendant. No finding was made as to what part of the sum which was earned by the defendant was so employed, nor that she was entitled to the land or any part thereof by reason of the investment of her money therein. The rule is well settled that as an incident to granting a divorce a court is empowered to restore to an innocent wife the entire property brought to the husband by reason of the marriage, and it is also held in some States that in dissolving the bonds of matrimony a partition of the accumulations may be made : 14 Cyc. 781; Stewart, Mar. & Div. § 375; *Brandt* v. *Brandt*, 40 Or. 477 (67 Pac. 508). This legal principle, however, cannot have any application to the case at bar, for the decree herein is based solely on the ground of awarding to the defendant maintenance for herself and support for her children under Section 513, B. & C. Comp.

Maintenance and permanent alimony are synonymous terms, and mean an allowance in money to be recovered on decree of a divorce from the party in fault for the support of the innocent party: B. & C. Comp. § 513 ; *Calame* v. *Calame*, 25 N. J. Eq. 548. A text-writer, in discussing this subject, says : "Unless so provided by statute, no fixed portion of the estate of either party is to be allotted to the other upon a divorce": 14 Cyc. 792. Thus, under a statute of New York which authorized provision to be made

for the support of an innocent party, and for the education of the children of the marriage, on decreeing a divorce, it was held that no power was conferred upon the court to set apart to the wife and daughter any specific household goods of the husband for the purposes specified, and that the decree should have compelled him to support them by supplying their daily needs: *Doe* v. *Doe*, 52 Hun, 405 (5 N. Y. Supp. 514). In *Crain* v. *Cavana*, 62 Barb. 109, a divorce a mensa et thoro having been given, the wife was awarded $450, which sum the decree stipulated should be "in lieu and satisfaction of all alimony, dower, right of dower, and all other claims which she (the complainant) may or can have, to the property of the defendant." The husband having died seised of certain lands, a suit was instituted to partition the widow's dower, and it was held that the provision of the decree as to the condition of payment was void, in consequence of which the right of dower was not barred. In referring to the conclusion thus reached, Mr. Vanfleet, in his work on Collateral Attack (section 733), makes the following observation: "This case seems to me to be wrong. The court had complete jurisdiction, with authority to determine all the rights of the parties, and a grant of money instead of specific property was merely an error of law which did not destroy the jurisdiction." It is believed, however, that the better rule is that, as the right to maintenance is conferred by statute, which in this State authorizes the payment of a sum of money only to the innocent party on granting a divorce, the court was without power to award to the defendant the possession of public land, and hence that part of the decree is void and vulnerable to collateral attack: 14 Cyc. 794.

5. The remaining question is whether or not the court erred in refusing to vacate the part of the decree so assailed. Though jurisdiction of valid judgments and de-

crees ceases with the close of the term at which they are given, unless authority over them is retained by motion or other appropriate proceeding (*Deering* v. *Quivey*, 26 Or. 556, 38 Pac. 710), superior courts possess ample power at all times to vacate void judgments, decrees and orders, and it is incumbent upon them to purge their records of the entries of such nullities when their attention is called thereto: Black, Judgments, § 307 ; 17 Am. & Eng. Ency. Law (2 ed.), 825 ; *Evans* v. *Christian*, 4 Or. 375 ; *State ex rel.* v. *McKinnon*, 8 Or. 488 ; *Ladd* v. *Mason*, 10 Or. 308 ; *Slate's Estate*, 40 Or. 349 (68 Pac. 399); *White* v. *Ladd*, 41 Or. 324 (68 Pac. 739, 93 Am. St. Rep. 732); *Conant's Estate*, 43 Or. 530 (73 Pac. 1018).

An error having been committed as indicated, the action of the court in denying the motion is reversed, and the part of the decree complained of vacated.    REVERSED.