Argued July 16; modified July 28; rehearing denied
October 20, 1931

# BILLION *v.* BILLION
(1 P. (2d) 1108, 3 P. (2d) 1113)

*John H. Kelley*, of Portland, for appellant.
*Henry S. Westbrook*, of Portland, for respondent.

BROWN, J. For nine years last past, each of the parties hereto has earnestly sought an annulment of their marriage contract. The plaintiff herein has filed two former suits in this court (See *Billion v. Billion,* 122 Or. 68 (256 P. 389), Idem, 124 Or. 415 (263 P. 397), and during this period of time the defendant has twice instituted suit for divorce at Reno, Nevada. The record establishes beyond all controversy that these litigants will never again attempt to live together as husband and wife. In the course of the litigation, each has combed the history of their entire married life in an attempt to bring to light faults of the other. But, notwithstanding the shortcomings attributed to this plaintiff, there is manifest in her a characteristic both out-

standing and admirable: She has reared with care their three children. She has kept them together. She has sewed for hire until her eyes have become weak. She has gone into the homes of others and labored with her hands, sweeping, cleaning, and scrubbing, in order that she might keep the children together, supply them with food, shelter and clothing, and provide for them an education. In this, the defendant has helped only when required by the court to do so.

Soon after the decision by this court of the second suit brought by the plaintiff herein, Vernon A. Billion, husband, without the advice of his attorney, disappeared from his usual haunts and secretly took up his residence in the state of Nevada; and the first information that his wife or children received that he had left the state of Oregon and had become a resident of Nevada came in the service of a divorce complaint and summons upon the wife. That suit was later abandoned for the reason that at the time it was filed he had not yet acquired a residence in the state of Nevada. Thereafter, the plaintiff commenced this suit, following which the defendant commenced a second suit in Nevada but was later enjoined from prosecuting the same.

The present suit is predicated upon cruel and inhuman treatment of the plaintiff by defendant, rendering her life with him burdensome, and, further, upon willful desertion by the defendant for more than one year immediately prior to the commencement of the suit.

■ The early rule declaring the acts which constitute cruel and inhuman treatment has been greatly modified. The difference is well pointed out in the case of

*Goff v. Goff,* 60 W. Va. 9 (53 S. E. 769), digested in 9 Ann. Cas. 1083, where the annotator, in an extensive note at pages 1090, 1091, wrote:

"According to the early rule, there must have been either actual violence committed, attended with danger to life, limb, or health, or there must have been a reasonable apprehension of such violence. Mental suffering, distress, or injury, and bodily injury resulting from mental suffering, were entirely insufficient to constitute cruelty [citing many cases]."

Continuing, the annotator states the modern rule as follows:

"The majority of the modern and better considered cases have repudiated the early rule as taking too low and sensual a view of the marriage relation, and it is now very generally held that any unjustifiable conduct on the part of either the husband or the wife, which so grievously wounds the mental feelings of the other spouse, or so utterly destroys the peace of mind of the other, as seriously to impair the bodily health or endanger the life of the other, or which utterly destroys the legitimate ends and objects of matrimony, constitutes cruelty or extreme cruelty, although no physical or personal violence may be inflicted, or even threatened, or reasonably apprehended."

Among the many authorities in support of this note appear the following from this court:

*Boon v. Boon,* 12 Or. 437 (8 P. 450); *Ryan v. Ryan,* 30 Or. 226 (47 P. 101); *Benfield v. Benfield,* 44 Or. 94 (74 P. 495). See also, *Beckley v. Beckley,* 23 Or. 226 (31 P. 470); *Crim v. Crim,* 66 Or. 258 (134 P. 13); *Belmont v. Belmont,* 82 Or. 612 (162 P. 830); *Coos v. Coos,* 82 Or. 693, 162 P. 860; *Steele v. Steele,* 96 Or. 630 (190 P. 716); *Bowers v. Bowers,* 98 Or. 548 (194 P. 697); *White v. White,* 100 Or. 387 (190 P. 969, 197 P. 1080); *Hawley v. Hawley,* 101 Or. 649 (199 P. 589); *Vinson v. Vinson,* 111 Or. 634 (226 P. 233).

In the second suit between these parties (see *Billion v. Billion,* 124 Or. 415 (263 P. 397), Mr. Justice Coshow, in rendering the opinion for the court, wrote:

"This suit presents a striking illustration of how husband and wife should not conduct themselves.

&ast; &ast; &ast; &ast; &ast;

"We cannot grant a divorce to either without doing violence to the law of this state and the former decisions of this court."

■ But the instant cause presents a different situation. While the parties are the same, the facts presented are widely different. The failure of the defendant to provide food, clothing and shelter for his wife and children, and his willful desertion of them, constitutes facts that cannot be explained or overcome. This court has held over and over again that a voluntary separation of one of the married parties from the other, without justification either in the consent or wrongful conduct of the other, constitutes willful desertion: *Sisemore v. Sisemore,* 17 Or. 542 (21 P. 820); *Wilhelm v. Wilhelm,* 90 Or. 435 (177 P. 57); *Blair v. Blair,* 124 Or. 611 (265 P. 415).

The trial court heard and saw the witnesses as they detailed from the witness stand the story of a father's negligence, the tale of a husband's desertion of wife and children. A setting down in our reports of the tale of sickness and distress suffered by his family while this defendant was in search of a divorce in the state of Nevada would profit nothing to the parties or to the profession. With certain exceptions hereinafter noted, the decree of the lower court will be affirmed.

The testimony of the secretary of the Equitable Savings & Loan Association, taken from the original ledger sheets of the company, shows that the real

estate owned by the defendant is all encumbered by mortgage. It appears therefrom that the property described as lots 2, 3 and 4, block 1, in Carter's Addition to East Portland, bears a mortgage for $2,000, dated April 15, 1919, of which principal amount there remained unpaid at the time of the trial hereof a balance of $671.02. In addition, there were unpaid taxes in the amount of $459.42, "and there is better than $130 of accrued interest on these taxes." This property, as well as the lots referred to as the garage property in East Portland, is also subject to a second mortgage in the sum of $2,340. This testimony shows that lot 14, block 2, Maegly Highland, bears a mortgage in the amount of $700, dated December 2, 1919, on which there remained unpaid the principal sum of $168.87. In addition thereto, the record shows a balance of insurance premiums and taxes advanced under this mortgage in the sum of $311.47, and something like $12 accrued interest. This property is encumbered with a second mortgage for $275. It likewise shows that lots 3 and 4, block 98, East Portland, referred to as the garage property, are encumbered with a mortgage for $15,000, bearing date September 26, 1924, on which, at the time of the trial, there remained due the principal sum of $11,425.36, as well as a balance of $668.29 due on taxes and insurance, and about "$50 that accrued since February 20, 1930."

The appraised value of the property is as follows:

Lots 2, 3, and 4, block 1, Carter's Addition to East Portland:

| | |
|---|---|
| Dwelling | $ 4,000 |
| Cash value of ground | 7,500 |
| Total value of property | $11,500 |
| Would bring at forced sale | $ 9,500 |

Lot 14, block 2, Maegly Highland:
Dwelling ............................................................$ 2,000
Cash value of ground ................................... 1,000

Total value of property ........................$ 3,000
Would bring at forced sale ..........................$ 2,500

Lots 3 and 4, block 98, East Portland (garage property, consisting of two-story and basement building):
Building ............................................................$16,000
Cash value of ground ................................... 25,000

Total value of property ..........................$41,000
Would bring at forced sale ..........................$35,000

This building was constructed at least twenty-five years ago, and has been remodeled for garage purposes. Only a part of the basement can be used "on account of too many posts."

How much more, if any, the indebtedness of these parties has grown since the taking of the testimony, we cannot say. Nor are we certain of the amount of special assessments, if any, that constitute liens upon this property. At the time of the trial the holder of the mortgages was demanding payment. It is the hope of the writer that the parties to this litigation, to the end that they may save themselves from a complete monetary loss, will attempt to cooperate in the disentanglement of their financial affairs.

■■■ When the defendant appealed this cause, he was unable to procure a stay bond. The plaintiff caused execution to issue, whereupon the sheriff sold at sheriff's sale the real property above described, and the plaintiff became a bidder and the purchaser of the property for the amount of her liens, aggregating $7,975.32.

Reaching our final determination of this case, we state the following as our authority for the decree we shall enter here:

"An appellate court may wholly affirm or reverse a decree appealed from, or it may affirm in part and reverse in part, or affirm with modifications." 5 Ency. Pl. & Pr., 965, 966.

The courts have often held that, where a decree is reversed in part and affirmed in part, such a reversal does not destroy the lien of so much of the decree as is affirmed: *Shepherd v. Chapman*, 83 Va. 215 (2 S. E. 273). See, also, collection of authorities in 5 Ency. Pl. & Pr., p. 966, note 2.

In view of the age of the defendant—which, by the law of nature, brings with it a material lessening of earning power—the condition of the real property, and the fact that the plaintiff is awarded one-third of all the realty possessed by the defendant, the decree of the trial court will be modified, in this:

In lieu of the award to plaintiff of the sum of $6,000 as gross alimony, we hereby award her as such alimony the sum of $2,500.

Further, in view of the testimony adduced by the defendant, we direct that, in lieu of the sum of $750 awarded to plaintiff as attorney's fees for carrying on this litigation, the plaintiff recover of and from the defendant as such attorney's fees the sum of $500.

In all other respects, the decree appealed from is affirmed.

By reason of this decree, the sale of the real property above referred to is null and void, and is hereby ordered set aside as of no effect.

BEAN, C. J., BELT and CAMPBELL, JJ., concur.

Petition for rehearing denied October 20, 1931

ON PETITION FOR REHEARING
(3 P. (2d) 1113)

BROWN, J. The defendant has filed a petition for a rehearing. For a statement of the issues made, see our original opinion.

■■ One of the chief objections made is that we failed to consider the efforts of the defendant to effect a reconciliation with his wife. We fully considered the matter presented in that regard, and from such consideration we reached the same conclusion as did the trial court; i. e., that a good-faith effort was not made by defendant to become reconciled with his wife. The record indicates that he did call upon his wife on one occasion and that, in a sneering tone, he asked her to make up. There is no testimony in the record tending to show that the messages concerning a reconciliation were messages from the defendant made in good faith for the purpose of persuading his wife to live with him again. We regret to annul a marriage contract when it is probable that the parties thereto could live together in peace and harmony. We held in *Hawley v. Hawley,* 101 Or. 649 (199 P. 589), that divorce is prima facie prejudicial to the public interest, and that it is the policy of the state not to destroy, but to preserve, the status of marriage. But the statute prescribes a specific ground for divorce, and, when proof in support of such ground comes before us it is our duty to grant a divorce. We believe that these parties litigant can no more make up their differences and live happily together than can a camel pass through a needle's eye.

The opinion is likewise criticised because the testimony of Elizabeth Billion was confused with that of her mother, the plaintiff herein. Elizabeth testified at

length as to the hardships of their home life. Concerning the fuel, she testified that "we borrowed fuel from the neighbors and took down old fences and under the front porch got some planks, boards, and my aunt got some fuel for us," and she testified that they were frequently without food. She testified that she went out and did housework to help support the family, while her mother sewed.

The record presents a pitiful tale of the struggle of the family of the defendant for food, clothing and shelter in the freezing winter weather. It tells the story of the acquisition of old clothing from other persons, and of the mother's toil in an endeavor to make clothing for her children therefrom in order to keep them warm. In addition, it tells the story of her sewing for hire, though ill, until her eyesight failed. This, while the husband and father was in the state of Nevada in quest of a divorce.

We think the litigation in this case should end. From a perusal of the testimony of record, we are satisfied that our former decision was right and just. The petition for a rehearing will be denied.

BELT and CAMPBELL, JJ., concur.

BEAN, C. J., absent.