Submitted on brief June 8, reversed and decree rendered June 29, 1920.

## STEELE v. STEELE.*

(190 Pac. 716.)

**Divorce—Evidence—Sufficient to Show Personal Indignities.**

1. Where defendant had frequently stated with profanity that he did not care for plaintiff and had refused to permit her to return home after she went to take care of his sick mother, the charge of personal indignities rendering life burdensome, which is ground for divorce under Section 507, L. O. L., was sustained.

———

*On indignities rendering condition intolerable or life burdensome as grounds for divorce, see notes in 18 L. R. A. (N. S.) 30; 34 L. R. A. (N. S.) 360.

On liability of father for support of children as affected by decree awarding custody to mother, see note in 2 L. R. A. (N. S.) 851.            REPORTER.

Divorce—Grounds—Personal Violence Unnecessary to Constitute "Personal Indignities."

2.   To constitute personal indignities which are a ground for divorce under Section 507, L. O. L., it is not necessary that there be actual personal violence or attempt at personal violence.

> [On necessity of personal violence to constitute cruelty warranting divorce, see note in 9 Ann. Cas. 1090. On habits or conduct of spouse as cruelty warranting divorce, see note in Ann. Cas. 1918B, 480.]

Divorce—Custody of Children—Defendant Earning $50 per Month Required to Pay $15 per Month for Support of Daughter.

3.   Where plaintiff had been awarded a divorce with custody of her 14-year old daughter, but it appeared that defendant had no property except his earnings, and that he was in poor health and capable of earning only about $50 per month, he will be required to pay $15 per month for the support of the daughter.

From Marion: GEORGE G. BINGHAM, Judge.

In Banc.

This is a suit for divorce by Belle Steele against D. D. Steele. From a decree for defendant, the plaintiff appeals. REVERSED AND DECREE RENDERED.

For appellant there was a brief submitted over the name of *Mr. M. E. Pogue.*

For respondent there was a brief prepared and submitted by *Messrs. Smith & Shields.*

BENNETT, J.—This is a suit for divorce brought by Mrs. Steele, the plaintiff. The plaintiff and defendant had been once married and divorced, but became reconciled and remarried,—largely on account of their daughter, apparently, who is now about fourteen years of age.

The suit is brought on the ground of cruel and inhuman treatment and personal indignities rendering life burdensome.

The plaintiff testified:

"He wasn't kind and he told me repeatedly he didn't care for me. The words he used, 'He didn't give a damn for me,' and it was only because of our daughter that he lived with me * * When I went after my trunks he told me he didn't give a damn for me; that he had ceased to love me.

"Q. Now, there is a statement here that sometime in 1918 you asked him for money for treatment by a physician. State to the court what was said at that time.

"A. Well, my health was very poor at that time, and I asked him for money to come to town. I was taking treatments, and he wouldn't give me any, and I made the remark, 'Donald, if you don't give me money, how do you expect me to get it?' And he said, 'I don't give a damn how you get it or where you get it.'"

Finally the plaintiff went to Salem to take care of the defendant's mother, who was very old and very sick, and who was living at the home of defendant's sister in Salem. After being at Salem for the purpose of taking care of his mother, for a week or two, she went back to Turner, where she and her husband lived, to attend the graduating exercises of her daughter. He didn't want her to return to Salem, and when she explained that there was no one else to help his sister take care of their mother, and that they had arranged to go back, he told her if she went to Salem to stay and never come back to his home again, and he has never since consented to her returning home.

All of this is corroborated by the daughter and by defendant's sister, who testified—and the defendant himself admits—that he ordered her to stay away if she went to Salem to take care of his mother, and

that he has never since been willing for her to come back. And defendant's own sister testified that at different times she had heard him say in the presence of the plaintiff that "he didn't care for her, that he had ceased to love her, and that he would never live with her again."

The defendant makes no defense except as to the matter of support for the daughter, but the district attorney appears on behalf of the state and contests the divorce.

There is no evidence or claim that plaintiff has ever misconducted herself in any way or been guilty of any kind of unlawful conduct.

1. We think the evidence is sufficient to sustain the charge of personal indignities. Section 507, L. O. L., provides that the marriage contract may be dissolved for "cruel and inhuman treatment or personal indignities rendering life burdensome."

We do not see how it could be otherwise than to make a woman's life burdensome, to live with a husband who had ceased to care for her, and who did not want to live with her and was frequently telling her so in such a coarse and brutal way, and that he did not "care a damn for her." We think no good purpose could be served by compelling a woman to live with a man under such circumstances.

2. It was supposed at one time that actual personal violence, or attempt at personal violence, was necessary to constitute cruel and inhuman treatment or personal indignities; but it is now well settled that that is no longer the law, if it ever was.

Section 88, 19 C. J., states the law thus:

"It was formerly thought that actual bodily harm, or apprehension thereof, must be shown to authorize

granting a divorce on the ground of cruelty, and this doctrine seems still to prevail in a few jurisdictions; but this view has been generally repudiated, and the modern doctrine is that any unwarranted conduct by either spouse which causes the other mental suffering of sufficient degree constitutes such cruelty as will authorize a divorce."

There are no two cases exactly alike, but we think this case is well within the principles announced by this court in *Lisenby* v. *Lisenby,* 89 Or. 273 (173 Pac. 888), and *Railsback* v. *Railsback,* 92 Or. 623 (182 Pac. 131). We think the plaintiff is entitled to her decree of divorce and for the custody of the daughter.

3. As to the allowance for the support of the daughter there is some difficulty. The parties seem to be working people and are poor. Neither of them have anything except their earnings. The defendant is engaged in the butcher business, apparently in a small way, in Turner, and his only revenue is from that business. His testimony in relation to the matter is undisputed, and he claims his receipts from the business over and above the expenses, are about $50 per month. As we have said, these people are working people, and the daughter has now reached the age where she can help some in her own support.

The defendant, according to his testimony which is also undisputed, has lately been sick and partly paralyzed for a period of three or four months, and he has never entirely recovered his health, and is not able to do hard work. We think under the circumstances he should contribute $15 a month toward the support of the daughter during her minority if she shall continue to remain dependent upon her mother and to live with her during that time. This is a meager sum, it is true, but under the circumstances it seems all the father will be able to contribute after

he takes care of his own living and necessary per-
sonal expenses.

The decree will be so framed.

REVERSED.    DECREE RENDERED.